Filed 5/21/25  Smith v. Bridle Path Homeowners Assn. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RAY SMITH, et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>BRIDLE PATH HOMEOWNERS ASSOCIATION, INC.,<br><br>    Defendant and Respondent. | 2d Civil No. B331987<br>(Cons. w/B333758)<br>(Super. Ct. No. 56-2019-00523695-CU-CO-VTA)<br>(Ventura County) |

Appellants own homes in a Simi Valley planned equestrian community known as Bridle Path.  Respondent, the Bridle Path Homeowners Association, Inc. (hereafter, HOA), governs the community.  For many years, the HOA watered and maintained landscaping on parkways and slopes that are adjacent to the bridle path and other common areas.  These areas are, however, located on appellants' lots.  In 2018, the HOA notified appellants that it would no longer maintain those areas.  Appellants contend the City of Simi Valley's (City) development permit and other resolutions require the HOA, rather than

individual homeowners, to maintain the disputed areas. The trial court entered judgment in favor of the HOA, finding that the community's Covenants, Conditions and Restrictions (CC&Rs) placed that responsibility on appellants. It also awarded the HOA its attorneys fees of $174,984.90. Appellants contend the trial court erred. We affirm.

*Facts*

The City of Simi Valley Planning Commission (SVPC) authorized development of the first phase of the Bridle Path planned community in 1976, subject to several conditions. (SVPC Resolution Nos. 69-75, 79-76.) These conditions required the developer to adopt CC&Rs approved by the City Attorney and to adopt a landscaping plan approved by the City's landscape architect. Condition C-8 provided, "The developer shall form a homeowners association in the form of CC&Rs acceptable to the City Attorney and the Director of Environmental Affairs which shall be responsible for maintenance of these areas: 1) Common Areas; 2) Bridle Trails at Streets; 3) Bridle Trails Easements at Housing Areas and at Open Recreation Areas; 4) Landscaped Parkways Along Interior Streets; 5) The Landscaped Backup Parkway on First Street; 6) The 'Streetscape' Trees, Including Trees Behind the Sidewalks, and Trees on Both Side of the Bridle Trails, Along Public Streets; 7) Extraordinary Maintenance of Public Streets Relating to Cleaning of Horse Manure and Other Work Items Related to Horse Use; 8) Structural Integrity and Appearance of Walls and Fences Along Common Areas and Bridle Trail Accessways."

The original CC&Rs provided that the HOA was "charged with the management and maintenance of all of the common properties. All improvements located within the

2

common properties, such as landscaping . . . shall be maintained in a safe condition and a state of good repair." Homeowners were obligated to water, fertilize and maintain "parkway trees," defined as trees "installed in the five foot area between the front curb and the bridle path or in the five foot area adjoining the sidewalk . . . ." Homeowners were also responsible for maintaining fences, trees and ground cover installed on their lot prior to the first sale. In addition, each homeowner is obligated to "keep that portion of the bridle path which fronts on or is on the lot of such owner, clear of debris."

In 1985 and 1986, the City adopted resolutions approving the annexation of Tract 4038 to the Bridle Path community, subject to CC&Rs approved by the City. (SVPC Resolution Nos. 10-85, 11-85.) These CC&Rs incorporate the original CC&Rs and require individual lot owners to "continually maintain in a good condition landscaping" on the owner's lot, to "maintain the parkways adjacent to his Lot in a safe condition[]," and to "maintain the portions of any bridle path adjacent to such Owner's Lot . . . ." They also obligate the HOA to maintain common areas and "all bridle paths . . . ."

The HOA later recorded amended CC&Rs providing, "It shall be the responsibility of each Lot Owner to maintain the parkways adjacent to this Lot in a safe condition and free from trash, weeds or other debris and public nuisances. Such maintenance shall include the maintenance of hedges, trees, shrubs, other plantings, fences and other permitted structures in a neat and safe condition and in a good state of repair." Appellants purchased their lots after these amended CC&Rs were recorded.

In 1990, the City adopted Resolution No. 90-88 annexing Tract 4038 to the Simi Valley Landscape District No. 1 as Zone 66. Appellants' homes are located in Zone 66. A memo prepared by City staff explained that "Zone 66 is proposed for annexation as a Fallback zone, with the Bridle Path Homeowners Association being responsible for maintenance of the landscaped areas. . . . The developer has complied with the conditions of entitlement by applying for annexation, installing the required landscaping and irrigation systems . . . and maintaining the landscaping in good condition . . . . Annexation to the Landscape District as a Fallback zone ensures the continued, proper maintenance of public landscaping (enriched parkways, integrity of slopes, and proper drainage) by the Bridle Path Homeowners Association."

Because Zone 66 was a "fallback zone," the "home/property owners associations or some other entity" would be responsible for maintaining the landscaping. If that entity dissolved, the City could "assume maintenance of the landscaping and assess the property owners for all required maintenance expenses." Staff further noted that the community's CC&Rs "detail the homeowners association's responsibilities for maintaining the common landscaped areas of the development, including the parkways and slopes identified within Zone 66 . . . . The fact that the Bridle Path Homeowners Association has been maintaining these areas in good condition since January 1989 is evidence of the property owners' understanding and acceptance of these responsibilities."

A report prepared by a City Planner noted that, "The annexation area will have Fallback status, with the Bridle Path Homeowners Association having responsibility for its landscape

4

maintenance.  Proposed for annexation are the parkways and slopes along [streets in the tract]."  The landscaping plan had been prepared by the developer and approved by City staff.  It was estimated that the annual cost to maintain this landscaping was $74,700.  Because the area was a Fallback zone, "no assessment is levied.  This zone is maintained by the Bridle Path Homeowners Association."

The HOA paid to water and otherwise maintain landscaping in the disputed areas for about 40 years, from the time of the annexation until 2017.  In 2018, the HOA board proposed an amendment to the CC&Rs that would have "clarify[ied]" that, "it shall be the exclusive duty of each Owner to . . . (a) Maintain all landscaping on his or her lot, wherever located . . . ; (b) Maintain the parkway adjacent to his or her Lot, and all improvements located in such areas . . . ."  This proposed amendment was not adopted.

When the HOA notified appellants that it would no longer maintain landscaping in the disputed area, appellants filed their complaint for injunctive relief, a declaratory judgment, breach of contract and breach of fiduciary duty.

*Trial Court Ruling*

After a three-day, non-jury trial, the trial court found in favor of the HOA.  It concluded that the CC&Rs and City resolutions required appellants to "maintain their properties and adjoining parkways," and that the City resolutions annexing their tract did not require maintenance by the HOA.  The CC&Rs, which obligated homeowners to maintain the disputed areas, were consistent with the City's resolutions because, "the City's concern is that the landscape be maintained, not necessarily who pays for or performs the maintenance."  When

5

the City approved the annexation of Tract 4038, Bridle Path's CC&Rs had already been adopted and recorded. The CC&Rs "detail how responsibility for landscape maintenance throughout the development is apportioned: the Association takes care of the common area, except for parkways adjacent to private lots. Lot owners take care of their own property, as well as adjacent parkways."

<em>Contentions</em>

Appellants contend the conditions of approval attached to the annexation and development of Tract 4038 require the HOA, rather than homeowners, to maintain landscaping in the disputed areas and that the CC&Rs cannot supersede those conditions. They contend the trial court erred in awarding attorney fees because their action is not one to enforce the CC&Rs.

<em>Standard of Review</em>

We review questions of law de novo and the trial court's findings of fact for substantial evidence. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1032; *Pearce v. Briggs* (2021) 68 Cal.App.5th 466, 473-474.) We review the amount of attorney's fees awarded by the trial court for abuse of discretion. (*Mountain Air Enterprises LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

<em>Discussion</em>

<em>Responsibility for Landscape Maintenance</em>

The trial court concluded appellants were bound by the CC&Rs to maintain the landscaping on their respective lots, including in the disputed area. It concluded the CC&Rs were not in conflict with conditions imposed by the City because the City approved the CC&Rs and appellants purchased their lots subject

6

to them.  Appellants contend these findings are incorrect as a matter of law.  In their view, the original conditions attached to the development permit and subsequent statements by City staff require the HOA, not individual homeowners, to maintain the landscaping.  We disagree.

The Subdivision Map Act authorizes a city to impose conditions on the development of a subdivision like the Bridle Path community.  (Gov. Code, § 66411; *Hill v. City of Clovis* (2000) 80 Cal.App.4th 438, 445.)  Here, the City conditioned its approval of the annexation and development of Tract 4038 on the adoption of CC&Rs and a landscaping plan that were acceptable to the City.  Among other things, the City required that, "All landscaping shall be continually maintained in good condition and shall be watered and kept clean and weed free. . . .  In addition, it shall be the responsibility of the property owner to maintain parkways adjacent to his property in a safe condition . . . .  The maintenance of the parkway shall include the maintaining of hedges, trees, shrubs, other plantings, fences, and other permitted structures in a neat and safe condition and in good repair."

The developer complied with these conditions by recording CC&Rs that require each homeowner to maintain landscaping on the owner's lot including the adjacent parkway and bridle path.  At that point, the developer was the "property owner" referred to in Condition C-8 because no individual lots had been sold.  Two years later, the HOA recorded an amendment that added an identical provision to another article of the CC&Rs.  The CC&Rs also require the HOA to "maintain all bridle paths within the above described real property and all properties annexed thereto . . . except to the extent that the

7

Owners are required to do so . . . ." The City annexed Tract 4038 to its Landscaping District No. 1 in 1990, two years after these CC&Rs were recorded.

Like the trial court, we conclude the City's adoption of Resolution 90-88 confirmed its approval of the amended CC&Rs. As noted above, those CC&Rs assign to the individual homeowner the responsibility of maintaining landscaping on his or her lot and on adjacent parkways and bridle paths. Statements by City staff cannot alter or amend previously recorded CC&Rs. (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 349 (*Anderson*).)

This conclusion is consistent with the original conditions of approval and the original CC&Rs. The original planned development permit required the developer to form an HOA and to adopt CC&Rs that were approved by the City Attorney and Director of Environmental Affairs. The developer complied with that condition by recording CC&Rs providing for an HOA that is "charged with the management and maintenance of all the common properties." They also require each homeowner to maintain the trees, ground cover, and parkway trees installed on their lot as well as the portion of the bridle path that is adjacent to their lot. We can infer these CC&Rs were acceptable to the City because the City approved later development permits without requiring any amendments to them.

Each appellant purchased his or her lot in the development after the CC&Rs were adopted. Appellants had constructive notice of their contents and are bound by them. (*Anderson, supra,* 12 Cal.4th at p. 349.) Because the CC&Rs assign to individual homeowners the responsibility for

8

maintaining landscaping on their lot and adjacent parkway and bridle path, the trial court correctly concluded that appellants are responsible for maintenance of those areas.

*Attorney Fees*

Appellants contend the trial court erred as a matter of law when it awarded attorney fees to respondent because this is not an action to enforce the CC&Rs and is instead an action to enforce the City's resolutions and conditions of approval. We are not persuaded.

Civil Code section 5975 requires an award of attorneys fees to the prevailing party "[i]n an action to enforce the governing documents" of an HOA. (*Id.*, subd. (c); *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1082 (*LNSU*); *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1380-1381 [fees awarded to prevailing party in action for breach of a contractual obligation created by CC&Rs and for declaratory relief adopting plaintiff's interpretation of CC&Rs].) To determine whether an action is one to enforce the governing documents, we examine the allegations in the operative complaint. (*LNSU, supra,* at pp. 82-83.)

The operative complaint here is appellants' Second Amended Complaint. That pleading alleges that the controversy between the parties "involves different interpretations of the documents setting forth the obligations for maintenance as to whether they are to be done by the [HOA] or the individual homeowners." These obligations stem, at least in part, from the CC&Rs because the City required the adoption of acceptable CC&Rs.

9

Appellants' first cause of action for injunctive relief alleges a controversy exists between the parties "concerning their respective rights and duties in that [appellants] contend that the CC&Rs are unclear as to defining their specific duties and maintenance requirements . . ." while the HOA "contends that the CC&Rs are clear and controlling . . . ." Appellants' third cause of action for breach of contract describes the CC&Rs as a contract and alleges the HOA has breached that contract as well as the implied covenant of good faith and fair dealing arising from it. Finally, appellants allege the HOA breached the fiduciary duty owed to its members. The CC&Rs are the only source of that duty.

Appellants also acknowledged in discovery responses that their claims were based at least in part on alleged violations of the CC&Rs. For example, appellants' responses to several special interrogatories describe their contention that the HOA breached "an implied or tacit agreement" when it interpreted Article X, section 7 of the CC&Rs "to cover the areas in dispute in this lawsuit." In response to another special interrogatory, appellants stated, "Yes, we contend the [HOA] breached provision[s] of the CC&Rs and owe attorney fees." Appellants also asserted their claim that the HOA owes them a fiduciary duty "based on all agreements and duties set forth therein." This statement appears to include the CC&Rs, which their previous answers described as a contract.

In light of these statements by appellants the trial court did not err when it concluded this action was one to enforce the governing documents of the HOA.

Appellants further contend the trial court abused its discretion when it declined to apportion or reduce attorneys fees

10

to account for claims unrelated to enforcement of the governing documents. They assert that the only claim relating to the HOA's governing documents was the claim relating to HOA member voting rights that was not referred to at trial. We disagree.

All of appellants' claims were based, at least in part, on the CC&Rs. The City's development conditions required the adoption of CC&Rs which are the governing document defining the parties' responsibilities for landscape maintenance. There is no basis for apportioning fees under these circumstances. (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 [apportionment not required where issues are "so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not"].)

*Conclusion*

The judgment is affirmed. Costs to respondent.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

11

Jeffrey Bennett, Judge

Superior Court County of Ventura

_____


Decker Law and James Decker, Griffin Schindler, Aisling Gorman, for Plaintiffs and Appellants.

HPS Associates and Arthur R. Petrie, Dan E. Heck, for Defendant and Respondent.